IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Delbert Wauneka,<br><br>        Petitioner,<br><br>vs.<br><br>Charles L. Ryan, et al.,<br><br>        Respondents. | No. CV-14-0036-PHX-GMS (JZB)<br><br>**REPORT AND RECOMMENDATION** |

TO THE HONORABLE G. MURRAY SNOW, UNITED STATES DISTRICT JUDGE:

      Petitioner Delbert Wauneka has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1.)

**I.    SUMMARY OF CONCLUSION**

      Petitioner was sentenced on December 7, 2006. (Doc. 23, Ex. M.) Petitioner's limitations period expired on March 8, 2008. Petitioner did not file this Petition until January 8, 2014.

      Statutory tolling is not warranted, and no equitable tolling is merited because Petitioner previously filed numerous, similar motions in state court. Insufficient evidence is presented to merit an actual innocence exception under *Schlup v. Delo*, 513 U.S. 298 (1995).

      For the reasons that follow, the Court concludes that Petitioner's claims are untimely. Therefore, the Court will recommend that the petition be denied.

## II. BACKGROUND

### A. FACTS OF THE CASE

The facts surrounding the convictions are summarized in the presentence investigation report:[1]

> On June 10, 2005 police were dispatched to a Circle K in reference to a sexual assault. Upon arrival, they came into contact with [the victim] and her boyfriend, Roger Coley. [The victim] indicated that she and Mr. Coley were in the parking lot of an abandoned bar when a subject, later identified as the defendant approached them and started a conversation. The defendant asked them if they wanted to get a couple of beers. They accepted the offer and went inside the nearby Circle K for the beers. When they got the beers, the defendant asked them if they wanted to go to his place. They accepted and he led them into the abandoned bar, where the three of them went to the second floor and sat and drank beer for approximately one hour. After a while, Mr. Coley went outside and the defendant, who was extremely intoxicated, jumped on top of [the victim], without being provoked, and began to strike her with closed fists in the head and face. The defendant then began to choke her and she thought that she was going to die. She could not breathe and the defendant ripped off her shirt and bra and began grabbing her breasts. The defendant was attempting to take off her pants but was unsuccessful. [The victim] said that she started to scream and Mr. Coley came into the room and the defendant got off of her. Mr. Coley told her to get out of the room and started to struggle with the defendant. She ran outside and Mr. Coley came after her with a shirt and put it on her. [The victim] was transported to the hospital where it was revealed that she had also sustained seven human bite marks on her back and one human bite mark on her arm.

(Doc. 23, Exh. B at 4.)

### B. TRIAL COURT PROCEEDINGS

#### 1. Plea and Sentencing

On June 14, 2005, the State indicted Petitioner on four counts: sexual abuse, a class 5 felony (Count 1); attempted sexual abuse, a class 2 felony (Count 2); kidnapping, a class 2 felony (Count 3); and aggravated assault, a class 6 felony (Count 4). (Doc. 23, Ex. A.)

On December 22, 2005 Petitioner's counsel, Joseph W. Charles, filed a motion seeking a Rule 11 examination to determine whether Petitioner was competent to stand trial. (Doc. 23, Ex. D.) On June 13, 2006, the court found that "the [Petitioner]

---

[1] Presentence reports are an appropriate source for the facts underlying a defendant's convictions. *See State v. Rose*, 297 P.3d 906, 912 (2013).

understands the proceedings and is able to assist counsel with [his] defense." (Doc. 23, Ex. I.)

On October 13, 2006, Petitioner entered into a plea agreement. (Doc. 23, Exs. J, K.) Petitioner agreed to plead guilty to Counts 1, 2 and 3. (Doc. 23, Ex. K.) The agreement recited that: (1) Count 1, sexual abuse, a class 5 felony, had a maximum sentence of 2 years; (2) Count 2, attempted sexual assault, a class 3 felony, had a maximum sentence of 7 years; and, (3) Count 3, kidnapping, a class 2 felony, had a maximum sentence of 10 years. (*Id.*) For Counts 1 and 2, Petitioner agreed to lifetime probation with registration as a sex offender. (*Id.*) For Count 3, Petitioner agreed to a term of imprisonment. (*Id.*) Petitioner agreed to waive and give up "the right to appeal." (*Id.*)

On October 13, 2006, Petitioner pleaded guilty pursuant to his plea agreement. (*Id.*) The court and Petitioner engaged in the following colloquy:

COURT: Have you had any drugs, alcohol, or medication in the last 24 hours?

PETITIONER: Not at all.

COURT: Now your attorney has just handed me a plea agreement that tells me that you would like to plead guilty to count 1, sexual abuse, a class 5 felony, count 2, attempted sexual assault, a class 3 felony, and count 3, kidnapping, a class 2 felony, all three of these crimes committed June 10, 2005. Is that what you would like to do?

PETITIONER: I guess I have no choice, your honor

COURT: Well, you certainly do. Your matter is set to begin trial on Monday, so if you are not independently, free of any coercion, duress, promises, willing to enter into this plea, I cannot accept it. So I will ask you again, is it your desire to enter into this plea agreement?

PETITIONER: I guess I've made my commitment, I've signed it –

COURT: That doesn't mean I have to accept it

| | | |
|---|---|---|
| PETITIONER: | | I am going to plead guilty, your honor. |
| COURT: | | Has anybody forced you or threatened you in any way to plead guilty? |
| PETITIONER: | | No. |
| COURT: | | Have any promises not contained within this document been made in order to get you to plead guilty? |
| PETITIONER: | | No. |
| COURT: | | Do you have a copy of the plea agreement in front of you? |
| PETITIONER: | | Yes I do. |

(. . .)

COURT:            Did you initial the paragraphs on all 3 pages?

PETITIONER:     Yes, I did.

COURT:            Did you sign your name on page 3?

PETITIONER:     Yes, I did, your honor.

COURT:            The agreements that you have with the State are set forth in paragraphs 2 and 3 at the top of page 2 and they include the following: as to counts 1 and 2, you shall be place on lifetime probation, and be required to register as a sex offender. As to Count 3, that you will be sentenced to a term in the department of corrections, and any sentence received shall run concurrently to any prison time imposed in CR2005-113881001DT. The state agrees to dismiss count 4 in this case. Is that your understanding of the agreement, sir?

PETITIONER:     Yes, your honor

(Doc. 23, Ex. L at 9:30-10:12.)

The court then asked Petitioner how he wished to plead to each of the counts:

COURT:            Okay. As to count 1, sexual abuse, a class 5 felony, committed June 10, 2005, how do you plead, guilty or not guilty?

| | | |
|---|---|---|
| PETITIONER: | | Guilty. |
| COURT: | | As to count 2, attempted sexual assault, a class 3 felony committed June 10, 2005, how do you plead? |
| PETITIONER: | | Guilty. |
| COURT: | | And as to count 3, kidnapping, a class 2 felony also committed June 10, 2005, how do you plead, guilty or not guilty? |
| PETITIONER: | | Guilty. |

(*Id*. at 10:12-10:40.)

Petitioner's counsel provided a factual basis for the plea, and Petitioner agreed the following facts were true:

> COUNSEL: …this occurred on or about June 10, started out at 1 o'clock in the afternoon, at a warehouse on 43rd Avenue and Camelback, it was abandoned, they got into it, they found liquor there at the warehouse, they had also three cases of beer, the three individuals, which included [the victim] and another gentleman, and my client defendant. They were up on the third floor, till dark, which was approximately 8 o'clock that night. The police apparently were called and came to the scene. As a result of the police coming there was panic and [the victim] started to jump out, and he restrained her and held her in there against her will. They had been talking about sexual relationships earlier in the afternoon and into the evening hours. She will claim that he made sexual advances to her that he touched her inappropriately, or attempted to touch her inappropriately in her chest area on her breast area, she is over the age of 15, she would also say that he attempted to have sexual intercourse with her, and that's why he was attempting, in her opinion, why he was restraining her and keeping her on that second floor level . . . The prosecutor has indicated that he has interviewed her numerous times since then he has avowed to me that she is ready, willing and able to testify Monday, concerning the statements that I've just given to you attributed to her as she related them to the police officers.
>
> COURT: Sir, is the information provided by your attorney true and correct?
>
> PETITIONER: Yes, it's true your honor.

(*Id.* at 19:15-21:03.)

On December 7, 2006, Petitioner filed a *pro se* motion for a time-served sentence, two motions to change counsel, and a motion to withdraw from the plea agreement. (Doc. 23, Exs. N, O, P.) He also appeared for sentencing later that day. (Doc. 23, Ex. M.) In his motion to withdraw, Petitioner claimed he was not guilty of the offense and only signed the plea agreement because his lawyer would not defend him and "made [him] sign" the agreement. (Doc. 23, Ex. P at 1.) Petitioner also asserted the police report contained lies and his attorney failed to file motions on his behalf. (Doc. 23, Ex. P.) The court heard argument from the parties and denied Petitioner's motion to withdraw and request for a time-served sentence. (Doc. 23, Ex. R at 6-7.) Petitioner withdrew his motion to change counsel and requested his sentencing proceed. (*Id.* at 10-11.) The court reiterated that Petitioner had knowingly, intelligently, and voluntarily waived all pertinent constitutional trial and appellate rights, and found Petitioner guilty on all three counts. (Doc. 23, Ex. Q; Ex. R at 12.) The court imposed a mitigated sentence of four years for Count 3 (kidnapping), to run concurrently with Petitioner's sentence in a prior matter (CR 2005-113881-001 DT). (Doc. 23, Ex. Q, Ex. R at 25-26.) For Counts 1 (sexual assault) and 2 (attempted sexual assault), the court placed Petitioner on concurrent terms of lifetime probation, to run consecutively to his prison sentence Count 3. (*Id.*)

In August 2008, Petitioner completed his sentence in Count 3, and began his probation on Counts 1 and 2. (Doc. 23, Ex. KK at 3.)

**2. Probation violations**

On March 10, 2009, the State filed petitions to revoke Petitioner's probation, and following a disposition hearing on August 21, 2009, the court reinstated probation. (Doc. 23, Ex. Y.) On December 2, 2009, the State moved to revoke probation on Counts 1 and 2 based on an allegation that Petitioner committed a burglary. (Doc. 23, Ex. Z.) Petitioner was found in violation of probation, but probation was reinstated on July 8, 2010. (Doc. 23, Exs. AA, BB.) On June 27, 2012, the State again filed two petitions to revoke probation based upon alleged violations. (Doc. 23, Ex. CC.) On July 25, 2012, the court

found Petitioner violated his conditions of probation, but probation was again reinstated. (Doc. 23, Ex. DD.) On November 14, 2012, the State moved to again revoke probation based on Petitioner's guilty plea to one count of sexual abuse. (Doc. 23, Ex. EE.) On December 3, 2012, the court found that Petitioner had violated the conditions of probation and sentenced Petitioner to concurrent terms of imprisonment. (Doc. 23, Exs. FF, GG.)

On August 14, 2012, Petitioner filed a notice of appeal from the court's finding of a probation violation on July 25, 2012. (Doc. 23, Ex. HH.) On March 1, 2013, Petitioner's counsel filed an Anders[2] brief in the Arizona Court of Appeals. (Doc. 23, Ex. II.)[3] On June 20, 2013, the Arizona Court of Appeals issued a memorandum decision affirming the court's finding of a probation violation. (Doc. 23, Ex. KK.) The court stated that it had "reviewed the entire record for reversible error and [found] none." (*Id*. at 7.) On July 8, 2013, Petitioner filed a petition for review in the Arizona Supreme Court. On November 13, 2013, the court declined to review the petition. (Doc. 23, Ex. OO.)

### C. PETITIONS FOR POST-CONVICTION RELIEF

#### 1. First Petition

On November 27, 2009, Petitioner filed a notice of post-conviction relief pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. (Doc. 23, Ex. PP.) On May 19, 2010, Petitioner's appointed counsel filed a Rule 32 petition challenging only the imposition of a bench warrant fee, claiming that there was no bench warrant. (Doc. 23,

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

[3] On April 12, 2013, Petitioner filed a *pro se* supplemental brief with the Arizona Court of Appeals, alleging that "during his arrest for those offenses, the police failed to read his *Miranda* rights, illegally searched his property, used physical coercion, and violated his right against self-incrimination." (Doc. 23, Ex. KK at 5, Ex. JJ.) Petitioner "also raise[d] claims of involuntary plea, ineffective assistance of counsel, prosecutorial misconduct, and speedy trial violations." (Doc. 23, Ex. KK.) Petitioner "further argued[d] the superior court violated the victim's rights and improperly denied his motions to dismiss counsel and withdraw his plea." (*Id*.) The court found that, pursuant to A.R.S. § 13-4033(B), "None of these issues are properly before [the court] because Wauneka cannot challenge his original convictions and sentence entered pursuant to his guilty plea in a direct appeal." (*Id*. at 5.)

Ex. RR.) On June 11, 2010, Petitioner filed a supplement to his Rule 32 petition. (Doc. 23, Ex. SS.) Petitioner alleged counsel was ineffective by failing to conduct a proper investigation of his case, failing to file a motion to suppress statements obtained in violation of *Miranda*, instructing court staff to remove the victim from the courtroom, telling the sentencing judge that Petitioner was a liar, and convincing the court to accept Petitioner's plea despite knowing Petitioner was innocent. (*Id*. at 4-16.) Petitioner also asserted violations of due process at sentencing, actual innocence, *Miranda* violations, and that his plea was involuntary. (*Id*. 11-19.) On January 5, 2011, the court stated that it would take no action on Petitioner's pro se supplement because Petitioner had a pending Rule 32 proceeding and was represented by counsel. (Doc. 23, Ex. VV.) On February 23, 2011, the court denied the Rule 32 petition because Petitioner "failed to provide any facts, affidavits, records or other evidence to support his claim." (Doc. 23, Ex. WW.)

### 2. Second Petition

On March 5, 2013, Petitioner filed a second notice of post-conviction relief. (Doc. 23, Ex. XX.) The court found the notice was timely "only as to the probation revocation that took place on December 3, 2012." (Doc. 23, Ex. ZZ.) On June 3, 2013, Petitioner filed a 25-page motion to supplement his Rule 32 petition, asserting similar claims to those in his June 11, 2010 petition. (Doc. 23, Ex. AAA.) Petitioner added numerous allegations to the supplement. (*Id*.) Petitioner also filed a signed affidavit stating he was questioned in violation of *Miranda*, he was assaulted by police officers, and that he did not understand the plea agreement he entered. (Doc. 23, Ex. BBB.) On June 14, 2013, the court found that the petition did not comply with Rule 32.5 of the Arizona Rules of Criminal Procedure because it failed "to contain a certification . . . that he has included every ground known to him for vacating, reducing, correcting or otherwise changing all judgments and sentences imposed on him." (Doc. 23, Ex. EEE.) The court granted Petitioner 30 days to submit a petition that complied with the rules. (*Id*.) On July 18, 2013, the court notified Petitioner that his deadline to submit the petition had expired on July 15, 2013. (Doc. 23, Ex. III.) The court granted Petitioner an additional extension to

August 23, 2013 to file a petition. (*Id.*) On October 9, 2013, the court dismissed Petitioner's Rule 32 proceeding because Petitioner did not file a petition. (Doc. 23, Ex. JJJ.)

Petitioner did not file an appeal of the dismissal to the Arizona Court of Appeals.

### D. FEDERAL PETITION FOR WRIT OF HABEAS CORPUS

On January 8, 2014, Petitioner filed the instant Petition for Writ of Habeas Corpus. (Doc. 1.) Petitioner raises four grounds for relief. In Ground One, Petitioner alleges that the conduct of police officers violated his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. (*Id*. at 6, 12-14.) In Ground Two, Petitioner alleges ineffective assistance of trial counsel violated his rights under the Sixth and Fourteenth Amendments. (*Id*. at 7, 15-31.) He also argues his attorney's conduct resulted in his involuntary plea. (*Id*. at 16.) He further contends the introduction of statements in a police report and 911 tape violates his rights to confrontation under the Fifth Amendment. (*Id*. at 17-18.) In Ground Three, Petitioner alleges the prosecutor committed misconduct in violation of his rights under the Fourth, Fifth, Sixth, and Fourteenth Amendments. (*Id*. at 8, 32-40.) In Ground Four, Petitioner alleges the trial court violated his Sixth Amendment and due process rights. (*Id*. at 41-46.) He also claims that his presentence-report interview violated his Fifth Amendment rights. (*Id*. at 46.)

On June 6, 2014, the State filed a Response to the Petition. The State argues the Petition is untimely, Petitioner waived his claims, his claims are procedurally defaulted, and his claims lack merit. (Doc. 23.)

On September 19, 2014, Petitioner filed a 63-page Reply. Petitioner argues similar claims to those presented in the Petition. (Doc. 30.) Petitioner also contends that actual innocence affords an exception to his untimeliness. (*Id*. at 26, 32, 46.) He further argues Arizona and federal sentencing laws are invalid (*Id*. at 49, 54-57), his plea agreement was breached (*Id*. at 51-52), his sentence was illegal (*Id*. at 54), and due process violations (*Id*. at 52-54).

## III. APPLICATION OF LAW

The writ of habeas corpus affords relief to persons in custody pursuant to the judgment of a state court in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 2241(c)(3), 2254(a). Petitions for Habeas Corpus are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U.S.C. § 2244.

### A. THE PETITION IS UNTIMELY.

The AEDPA imposes a one-year limitations period, which begins to run "from the latest of . . . the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).

#### 1. Time Calculation

Petitioner pleaded guilty, and was precluded from pursuing a direct appeal in the Arizona Court of Appeals. *See* Ariz. Rev. Stat. § 13–4033(B). Rather, Petitioner could seek review of his conviction and sentence in an of-right proceeding pursuant to Rule 32, which is the functional equivalent of a direct appeal. *See* Ariz. R. Crim. P. 32.1 and 32.4.; *Summers v. Schriro*, 481 F.3d 710, 715–16 (9th Cir. 2007) (noting that Arizona courts consider Rule 32 of-right proceedings a form of direct review). Petitioner's conviction became "final" at the conclusion of the first "of right" post-conviction proceeding under Arizona Rule of Criminal Procedure 32. *Id*. at 717.

On December 7, 2006, Defendant was sentenced pursuant to a plea agreement. (Doc. 23, Ex. Q, Ex. R.) To bring an of-right proceeding under Rule 32, Petitioner was required file a notice of his intent to file a Petition for Post–Conviction Review within 90 days of conviction and sentencing. *Id*. at 715 (citing Ariz. R. Crim. P. 32.4(a)). Petitioner did not begin post-sentence collateral relief proceedings within 90 days, which was March 7, 2007.[4] Barring any applicable tolling, Petitioner's limitations period would

---

[4] Petitioner's first post-conviction relief proceedings began on November 27, 2009. (Doc. 23, Ex. PP.) These proceedings concerned a warrant fee that was imposed at Petitioner's probation revocation/disposition hearing in 2009. (Doc. 23, Ex. Y.) The court denied this Rule 32 petition on February 23, 2011. (Doc. 23, Ex. WW.)

have expired one year later on March 8, 2008. Petitioner did not file this Petition until January 8, 2014. The Petition is untimely.

The Petition is untimely because it was not filed within the deadline established by 28 U.S.C. § 2244(d)(1). Absent equitable tolling or other exception, the Petition will be dismissed with prejudice, regardless of the margin of untimeliness. *See United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000) (holding that federal habeas petition submitted one day late was properly dismissed as untimely under AEDPA, and noting that a "missed" deadline "is not grounds for equitable tolling"); *Hartz v. United States*, 419 Fed. Appx. 782, 783 (9th Cir. 2011) (unpublished) (affirming dismissal of federal habeas petition where petitioner "simply missed the statute of limitations deadline by one day"); *Lookingbill v. Cockrell*, 293 F.3d 256, 265 (5th Cir. 2002) ("[w]e consistently have denied tolling even where the petition was only a few days late"); *United States v. Locke*, 471 U.S. 84, 100–01 (1985) ("If 1-day late filings are acceptable, 10-day late filings might be equally acceptable, and so on in a cascade of exceptions that would engulf the rule erected by the filing deadline . . . A filing deadline cannot be complied with, substantially or otherwise, by filing late—even by one day.").

### 2. Statutory Tolling

Petitioner's limitations period expired on March 8, 2008. The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2).

Petitioner's first post-conviction relief proceedings began on November 27, 2009. (Doc. 23, Ex. PP.) These proceedings did not restart the limitations period. Once the AEDPA limitations period expires, a subsequently filed state post-conviction proceeding cannot restart the statute of limitations. *See Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (noting that an application for state post-conviction relief filed after expiration of the AEDPA statute of limitations did not reinitiate the limitations period). Accordingly, statutory tolling does not apply.

Absent equitable tolling, the Petition is untimely.

### 3. Equitable Tolling

"A petitioner who seeks equitable tolling of AEDPA's one-year filing deadline must show that (1) some 'extraordinary circumstance' prevented him from filing on time, and (2) he has diligently pursued his rights. *Luna v. Kernan*, 784 F.3d 640, 646 (9th Cir. 2015) (citing *Holland v. Florida*, 560 U.S. 631, 649, (2010)). The petitioner bears the burden of showing that equitable tolling should apply. *Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 (9th Cir. 2005). Equitable tolling is only appropriate when external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely habeas action. *Chaffer v. Prosper*, 592 F.3d 1046, 1048–49 (9th Cir. 2010). Equitable tolling is to be rarely granted. *See, e.g.*, *Waldron–Ramsey v. Pacholke,* 556 F.3d 1008, 1011 (9th Cir. 2009); *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006); *Stead v. Head*, 219 F.2d 1298, 1300 (11th Cir. 2000). Petitioner must show that "the extraordinary circumstances were the cause of his untimeliness and that the extraordinary circumstances made it impossible to file a petition on time." *Porter v. Ollison,* 620 F.3d 952, 959 (9th Cir. 2010). "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.'" *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (quoting *Marcello*, 212 F.3d at 1010).

Here, Petitioner asserts equitable tolling should be granted because "it took" seven years for Petitioner "to recover from" his head injury. (Doc. 1 at 11.) He also asserts that he did not have transcripts. (*Id*.) Petitioner's prior ability to file numerous, similar pleadings undermine his claim. On June 11, 2010, Petitioner filed a 20-page "Motion to Supplement Rule 32 Petition" alleging similar arguments to those presented in his current habeas petition. (Doc. 23, Ex SS.) Petitioner filed a nearly-identical motion on October 28, 2010. (Doc. 23, Ex. UU.) On March 5, 2013, Petitioner filed a Notice of Post-Conviction Relief (Doc. 23, Ex. XX), and a subsequent 25-page Motion to Supplement Rule 32 Petition on June 3, 2013 (Doc. 23, Ex. AAA). On April 12, 2013, Petitioner filed a 25-page "Supplemental Brief" in the Arizona Court of Appeals. (Doc. 23, Ex. JJ.) On

June 27, 2013, Petitioner filed a 12-page "Motion for Reconsideration" in the Arizona Court of Appeals. (Doc. 23, Ex. LL.) The record does not reflect that Petitioner's head injury inhibited his ability to file a timely Petition. Competency proceedings conducted in 2009 resulted in the trial court finding Petitioner competent. (Doc. 23, Exs. V, W.) Petitioner has not established that equitable tolling should apply in this case.

Petitioner also asserts that a lack of transcripts should be considered in this matter. The alleged lack of access to transcripts does not constitute grounds for equitable tolling. Petitioner asserts the same claims he presented in an untimely manner before the state court in 2010 and 2013. The lack of a transcript did not preclude Petitioner's ability to file a timely petition. *See Jihad v. Hvass*, 267 F.3d 803, 806–07 (8th Cir. 2001) (stating that prisoner's lack of access to a transcript did not preclude the timely commencement of post-conviction proceedings and, therefore, did not warrant equitable tolling). Petitioner pleaded guilty, and most of his claims concern facts surrounding his arrest for which there are no transcripts. *See Waldron–Ramsey v. Pacholke*, 556 F.3d 1008, 1014 (9th Cir. 2009) (stating that petitioner "could have prepared a basic form habeas petition and filed it to satisfy the AEDPA deadline."); *United States v. Battles*, 362 F.3d 1195, 1198 (9th Cir. 2004) (even without access to his case file, petitioner must "at least consult his own memory of the trial proceedings.").

### 4. Actual Innocence

To avoid a miscarriage of justice, the statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude this Court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence. "Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . [or] expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013). "When an otherwise time-barred habeas petitioner 'presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of non-harmless constitutional error,' the Court may consider the petition on the merits. *See*

*Stewart v. Cate*, 757 F.3d 929, 939 (9th Cir. 2014) (quoting *Schlup v. Delo*, 513 U.S. 298 (1995)).

To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Perkins*, 133 S. Ct. at 1935 (quoting *Schlup*, 513 U.S. at 327). This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Perkins,* 133 S.Ct. at 1936 (quoting *Schlup*, 513 U.S. at 316). Such a claim must be founded upon "new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. However, "the habeas court's analysis is not limited to such evidence," but rather "the habeas court must consider 'all the evidence,' old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under 'rules of admissibility that would govern at trial.'" *House v. Bell*, 547 U.S. 518, 537–38 (2006) (quoting *Schlup*, 513 U.S. at 327–28). Significantly, "[t]his is a high threshold that is rarely met." *Lee v. Lampert*, 653 F.3d 929, 945 (9th Cir. 2011). *See also Perkins*, 133 S. Ct. at 1928 ("tenable actual-innocence gateway pleas are rare").

Here, Petitioner presents no new, reliable evidence of actual innocence, and he fails to satisfy the "demanding" standard for a miscarriage-of-justice exception to the procedural bar.[5] *See House v. Bell*, 547 U.S. 518, 538 (2006). Petitioner fails to present anything other than his unsupported assertions. Notably, there is no new information

---

[5] The Petition alleges Petitioner's rights were violated but does not argue actual innocence. *See* Ground One (conduct of police); Ground Two (ineffective assistance of counsel); Ground Three (prosecutorial misconduct); and, Ground Four (trial court conduct). The Court nonetheless considers the actual-innocence exception because Petitioner alleges that he was "[o]bedient to his parents plead guilty involuntary but maintained his innocences…." (Doc. 1 at 26.) Petitioner argues actual innocence in his Reply. (Doc. 30 at 26, 32, 46.)

regarding actual innocence other than a general claim of innocence. For example, Petitioner's claim that his confession was involuntary is not evidence that he is innocent. An involuntary confession may still be truthful. *Schlup* instructed that a claim of actual innocence must be supported by "new reliable evidence." *Schlup*, 513 U.S. at 324. Petitioner does not meet this standard.

### 5. *Martinez v. Ryan*

On October 23, 2014, Petitioner filed a Motion for Evidentiary Hearing arguing, in part, that his untimeliness should be excused due to ineffective assistance of counsel. (Doc. 32 at 7.) In his Motion, Petitioner cites to *Martinez v. Ryan*, 132 S. Ct. 1376 (2012). (*Id.*)

*Martinez* does not address or create an exception to the AEDPA statute of limitations. Federal courts have consistently rejected the argument that *Martinez* provides relief for time-barred petitions in the form of equitable tolling of the statute of limitations. *See Chavez v. Sec'y, Fla. Dep't Corr.,* 742 F.3d 940, 945 (11th Cir. 2014) ("Chavez's initial § 2254 petition was dismissed as untimely because it was filed more than one year after his convictions became final on direct review, see 28 U.S.C. § 2244(d)(1)(A), and nothing in *Martinez* alters that fact."); *Manning v. Epps*, 688 F.3d 177, 189 (5th Cir. 2012) (*Martinez* does not extend statute of limitations period under 28 U.S.C. § 2244(d)(1)(B)). *See also, Madueno v. Ryan*, No. CV-13-01382-PHX-SRB, 2014 WL 2094189, at *7 (D. Ariz. May 20, 2014) ("*Martinez* has no application to the statute of limitations in the AEDPA which governs Petitioner's filing in federal court."); *Wheelwright v. Wofford*, No. 2:13-cv-0787 GGH (HC), 2014 WL 3851155 at *3 (E.D. Cal. Aug. 5, 2014) ("Although the rule in *Martinez* is an equitable one, it applied only to procedural default issues and does not apply to equitable tolling principles pertinent to the AEDPA limitations issue."); *Perry v. Uribe*, No. SACV 11-0692 RGK (RNB), 2014 WL 4463120 at *3 (C.D. Cal. July 24, 2014) ("*Martinez* dealt solely with the state procedural default doctrine, which is entirely different from the issue presented here of whether Petitioner herein (including the ineffective assistance of trial counsel claim

alleged in Ground 2) was time barred under the AEDPA statute of limitations."); *White v. Martel*, 601 F.3d 882, 884 (9th Cir. 2010) (the adequacy analysis used to decide procedural default issues is inapplicable to the determination of whether a federal habeas petition was barred by the AEDPA statute of limitations).

### B. PETITIONER'S MOTIONS FOR EVIDENTIARY HEARING AND TO EXPAND THE RECORD

Petitioner requests an evidentiary hearing. (Doc. 32.) An evidentiary hearing is not warranted regarding Petitioner's claims, including equitable tolling, because the record is sufficiently developed to resolve Petitioner's assertion that his head injury precluded him from filing a timely petition. A habeas petitioner asserting equitable tolling "should receive an evidentiary hearing when he makes 'a good-faith allegation that would, if true, entitle him to equitable tolling.'" *Roy v. Lampert*, 465 F.3d 964, 969 (9th Cir. 2006) (quoting *Laws v. Lamarque*, 351 F.3d 919, 919 (9th Cir. 2003). An evidentiary hearing is not mandatory. "Where the record is amply developed, and where it indicates that the petitioner's mental incompetence was not so severe as to cause the untimely filing of his habeas petition, a district court is not obligated to hold evidentiary hearings to further develop the factual record, notwithstanding a petitioner's allegations of mental incompetence." *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010). *See also*, *Gaston v. Palmer*, 417 F.3d 1030, 1035 (9th Cir. 2005) (affirming conclusion that "[b]ecause [Gaston] was capable of preparing and filing state court petitions [during the limitations period], it appears that he was capable of preparing and filing a [federal] petition during the [same time]").

The state record demonstrates Petitioner filed numerous, detailed motions in state court. *See* Section III.A.3. *supra* ("Equitable Tolling"). The Court is also mindful that when evaluating a *pro se* habeas petitioner's allegations of such extraordinary circumstances, the court must "construe pro se habeas filings liberally." *Id.* (quoting *Allen v. Calderon*, 408 F.3d 1150, 1153 (9th Cir. 2005)).

Here, even construing his Petition liberally, Petitioner fails to allege extraordinary

16

circumstances that kept him from filing his federal habeas petition on time.

The Court further concludes that an evidentiary hearing on the *Schlup* gateway claim is not warranted. Petitioner's claim of innocence is insufficient for the Court to "lose confidence in the outcome of the trial." *Schlup*, 513 U.S. at 316. *See also Stewart*, 757 F.3d at 941 (noting that the "*Schlup* Court suggested that when considering an actual-innocence claim in the context of a request for an evidentiary hearing, the district court need not test the new evidence by a standard appropriate for deciding a motion for summary judgment, but rather may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence") (citations and quotations omitted)). Accordingly, the Court recommends that Petitioner's Motion for an Evidentiary Hearing be denied.

Petitioner also requests the Court grant his Motion to Expand the Record in this matter so that the "911 tape recording, and police report be admitted." (Doc. 33 at 3.) Petitioner further requests "complete state-court" records from numerous state agencies (regarding competency) (*Id.* at 8), "all of Judge Hentze's proceedings" (regarding claims in his Petition) (*Id.* at 11), and discs, videotapes, and "original/certified transcripts" in his case (*Id.* at 20).

The Court recommends the Petition be denied as untimely. Because these items are not germane to the issue of untimeliness, the Court will also recommend that Petitioner's Motion to Expand the Record (Doc. 33) be denied. (*Id.* at 3.)

## CONCLUSION

The record is sufficiently developed and the Court does not find that an evidentiary hearing is necessary for resolution of this matter. *See Rhoades v. Henry*, 638 F.3d 1027, 1041 (9th Cir. 2011); *Roberts v. Marshall*, 627 F.3d 768, 773 (9th Cir. 2010). Based on the above analysis, the Court finds that Petitioner's claims are untimely, precluded or procedurally barred from review, and Petitioner has not satisfied the burden to establish actual innocence. The Court will therefore recommend that the Petition for Writ of Habeas Corpus (Doc. 1) be denied and dismissed with prejudice.

**IT IS THEREFORE RECOMMENDED** that the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Petitioner's Motion for Evidentiary Hearing (Doc. 32) and Motion for Expansion of the Record (Doc. 33) be denied.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment. The parties shall have 14 days from the date of service of a copy of this Report and Recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(b) and 72. Thereafter, the parties have 14 days within which to file a response to the objections.

Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgment entered pursuant to the Magistrate Judge's Report and Recommendation. *See* Fed. R. Civ. P. 72.

Dated this 12th day of June, 2015.

Honorable John Z. Boyle
United States Magistrate Judge